IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

PORTAL DE CAGUAS, INC.

    Debtor

CASE NO. 23-02516 (ESL)

CHAPTER 11

FILED & ENTERED AUG/12/2024

## OPINION AND ORDER LEVYING SANCTIONS

This case is before the court upon the *Motion for Sanctions* (dkt. #644) filed by SL Funding 3, LLC ("SL Funding"), requesting sanctions against Island Healthcare, LLC (the "DIP Lender"), and Alter Domus (US) LLC ("Alter Domus", and together with the DIP Lender, the "Lender Parties"), and the responses thereto (dkt. #674, #691, #698). For the reasons discussed below, the *Motion for Sanctions* (dkt. #644) is GRANTED.

### Factual and Procedural Background

The court will only summarize those matters related to the resolution of the instant controversy.

1.    On December 12, 2023, SL Funding filed a *Motion for Order Clarifying the SL Funding Dispute Adjudication Process and for Status Conference* (dkt. #402) to clarify the SL Funding Dispute Adjudication Process,[1] proposing a streamlined "bifurcated process whereby the threshold issue of notice is resolved by way of a limited discovery period to conduct written discovery and depositions, which will be completed by February 9, 2024, followed by supplemental briefing and an evidentiary hearing to be held on or before February 29, 2024 wherein the Court will hear evidence regarding the notice, if any, provided to SL [Funding] in

---

[1] The SL Funding Dispute Adjudication Process is defined in the *Order Approving Purchase and Sale Agreements of Grupo Hima Caguas Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims Interests and Encumbrances* ("*Caguas Sale Order*", dkt. #353) as including the adjudication and/or resolution of the "(i) the validity and merits of SL Funding's position at Docket No. 316 of Case No. 23-02516 (ESL); (ii) SL Funding's allowed claim amount; (iii) the amount of SL Funding's allowed secured claim, if any; (iv) the extent, priority, and/or validity of SL Funding's secured interest; and/or (iv) any other related or applicable contested matters and/or adversary proceedings against SL Funding in connection to the above". Id., p. 19.

this case and determine whether SL was provided proper notice of the bidding and sale process, the DIP financing motions, and the Sale Orders" (id., p. 5) (the "SL Funding Dispute Adjudication Process").

2. On December 14, 2023, the court entered an *Order* (dkt. #413) granting the streamlined SL Funding Dispute Adjudication Process, ordering the parties to move the court with their respective positions by December 22, 2023, and stating that a "separate order scheduling the status conference" would be entered.

3. On December 15, 2023, the court scheduled a status conference for March 5, 2024, at 10:00 AM, in presence, to consider the SL Funding Dispute Adjudication Process (the "Hearing"). See *Order and Notice*, dkt. #415.

4. On March 5, 2024, at 10:00 A.M, the status conference was held. SL Funding appeared via counsel, the Lender Parties did not. See *Minutes of Hearing Held on March 5, 2024*, Bankr. Case No. 23-2516, dkt. #632, p. 2, lines 7-9; *Transcript of Hearing Held on March 5, 2024*, Bankr. Case No. 23-2516, dkt. #652, p. 2, lines 7-9.

5. On March 12, 2024, SL Funding filed the *Motion for Sanctions* (dkt. #644), requesting sanctions against the Lender Parties under Fed. R. Civ. P. 16(f) and the court's own inherent power, specifically: "costs and attorneys' fees incurred by SL [Funding] in preparing for and attending the status conference, the attorney's fees incurred in drafting this motion and related incidents" (id., p. 9).

6. On March 26, 2024, the Lender Parties filed a *Joint Opposition to [] Motion for Sanctions* (dkt. #674), averring that "the Lender Parties genuinely believed that the Hearing was either (a) not going forward, or (b) that the their presence was no longer necessary due to the shifting landscape in this matter based on, among other things, (i) the various motions filed by SL Funding trying to change the scope, the procedural vehicles, and the timing of what the Disputed SL Funding Claims [] and the SL Funding Dispute Adjudication Process [] was supposed to encompass, (ii) Debtors' filing of the Adversary Complaint, and (iii) the Court's various Orders entered between December 2023 and January 2024" (id., p. 2). The Lender Parties continue by

stating that the Lender Parties' counsel "had already committed their time (that would have otherwise been reserved to attend the Hearing) to other professional endeavors, specifically, appearing at the confirmation hearing in the case of *In re Puerto Rico Electric Power Authority*, Case No. 17-04780 (LTS) (D.P.R.)" (id., p. 3). The Lender Parties also attempt to shift blame for their non-appearance onto SL Funding, stating: "the Lender Parties need to point out that source of most (if not all) the confusion here has been caused by SL Funding itself, by continuously shifting the goalpost of what the Disputed SL Funding Claims is supposed to consist of and the extent of the SL Funding Dispute Adjudication Process" (id.). Lastly, they state that "any qualms that SL Funding, and its attorneys, might have over the travel expenses incurred in flying stateside counsel for a status conference is nothing more than self-inflicted harm given that SL Funding has capable local counsel which could have appeared on its behalf" (id., p. 13).

7.      On March 27, 2-24, SL Funding was ordered to reply to the opposition within seven (7) days. See *Order*, dkt. #679.

8.      On April 3, 2024, SL Funding filed a *Reply [] Joint Opposition to [] Motion for Sanctions* (dkt. #691), arguing that only Attorney Zouairabani appears to have been present at the PREPA hearing, citing a motion filed at dkt. #4791 and #4818 of Case No. 17-04780 (LTS), indicating only that Attorney Zouairabani would appear at the Hearing. Thus, "[t]here is nothing in the record indicating why Mr. García-Solá and Mr. del Valle could not have appeared at the Hearing" (id., p. 10). They also argued that it was likely that a pending motion for mediation filed by the Lender Parties would be heard.

9.      On April 10, 2024, the Lender Parties filed a *Joint Sur-Reply []* (dkt. #698), averring that motion for mediation was not ripe for discussion; SL Funding's own confusion as to what issues were going to be addressed supports the Lender Parties' position that the hearing was either not going forward or their presence was unnecessary; and that, on March 5, 2024, Counsel for Debtors called Attorney Zouairabani to inquire whether they would attend the hearing, at which point Attorney Zouairabani called an associate at this firm, Attorney Rivera Llorens, who tried to appear telephonically for over an hour but was ultimately unsuccessful.

Lastly, they argue that "the misunderstanding and confusion that caused the Lender Parties not to appear at the Hearing simply does not rise to the level that would merit the imposition of sanctions upon them" (id., p. 9).

APPLICABLE LAW AND ANALYSIS

(A)    Sanctions, Generally

"Sanctions stem, in part, from a need to regulate conduct during litigation. Thus, a sanction may properly have a punitive aspect." Goya Foods, Inc. v. Wallack Mgmt. Co., 344 F.3d 16, 20 (1st Cir.2003) (citations omitted).

Bankruptcy courts generally have three sources of power from which to impose sanctions: (a) Fed. R. Bankr. P. 9011 (which parallels Fed. R. Civ. P. 11); (b) 28 U.S.C. § 1927; and (c) the inherent power of the court. See In re MJS Las Croabas Properties, Inc., 530 B.R. 25, 35 (Bankr. D.P.R. 2015) (collecting cases); Kimberli A. Cary, The Arsenal of Sanctioning Powers at the Bankruptcy Court's Disposal, 13 Bank. Dev. J. 443, 444 (Spring 1997). These sources overlap and are not mutually exclusive. See Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (finding that, despite Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 both being potentially applicable, court was not required to resort to using them when inherent power of court was best suited to facts); Danielle Kie Hart, And the Chill Goes on—Federal Civil Rights Plaintiffs Beware: Rule 11 *vis-à-vis* 28 U.S.C. § 1927 and the Court's Inherent Power, 37 Loy. L.A. L.Rev. 645 (2004) (exploring the interaction of Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and inherent power of court).

"The mildest [form of sanctions] is an order to reimburse the opposing party for expenses caused by the failure to cooperate. More stringent [sanctions] are orders striking out portions of the pleadings, prohibiting the introduction of evidence on particular points and deeming disputed issues determined adversely to the position of the disobedient party. Harshest of all are orders of dismissal and default judgment." Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2nd Cir.1979). Also see In re Emanuel, 422 B.R. 453, 464 (Bankr. S.D.N.Y. 2010) (an award for reasonable attorneys' fees and expenses incurred "is the mildest

form of sanctions"). A sanction's "essential purpose [is] to compensate for an injury that has already occurred and cannot be undone." In re Emanuel, 422 B.R. at 464.

(B) The Court's Inherent Power to Levy Sanctions

"[F]ederal courts have inherent power to discipline attorneys who appear before it". Ryan v. Astra Tech, Inc., 772 F.3d 50, 56 (1st Cir. 2014). "It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed within a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases". Chambers, 501 U.S. at 43 (quotations and citations omitted). In Puerto Rico, PR L. Civ. R. 83E(c) and (d), applicable to the instant case through PR LBR 1001–1(b), preserves this court's inherent power to sanction attorneys appearing before it.

The court's inherent power to sanction is broad. See Chambers, 501 U.S. at 46. The scope of the power reaches any abuse of the judicial process. See id., at 44. Hence, "[a] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id., at 45-46 (quotations and citations omitted). The inherent power of the court includes the authority to sanction for abuses that occur "beyond the courtroom". Id., at 57.

In the instant case, the sequence of events narrated in the motion and responses under our consideration are fully supported by the record, as summarized above, and show that the Lender Parties knowingly disregarded this court's orders in failing to appear at the in presence Hearing (dkt. #415). The court notes that while Attorney Zouairabani was otherwise engaged, the Lender parties fail to account for the non-appearance of other firm attorneys. Ultimately, the court finds that the Lender Parties' conduct cannot be deemed as vexatious, harassing, or annoying. Notwithstanding, the court does find that the actions and omissions stated above are sanctionable under this court's inherent power. Based on the foregoing, SL Funding is entitled to attorney's fees

and costs incurred by SL Funding in preparing for and attending the Hearing – exclusive of travel time, airfare, and/or lodging – and the attorneys' fees incurred in drafting the *Motion for Sanctions* (dkt. #644) and related replies (dkt. #691).

 (C) Sanctions under Fed. R. Civ. P. 16(f)

  The *Motion for Sanctions* (dkt. #644) was filed under Fed. R. Civ. P. 16(f) and the court's own inherent power. The court finds that Fed. R. Civ. P. 16(f) is made applicable solely to adversary proceedings under Fed. R. Bankr. P. 7016. The Hearing, while related to Adversary Proceeding No. 23-00097, was scheduled in relation to the underlying bankruptcy case. See *Order and Notice*, dkt. #415. The court thus finds that Fed. R. Civ. P. 16(f) is inapplicable.

(D) Standard to Determine the Amount of Sanctions

  "The same standards of compensation and reimbursement apply whether sanctions are awarded under Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927 or the Court's inherent power." In re Emanuel, 422 B.R. at 467, citing PaineWebber, Inc. v. Can Am Financial Group, Ltd., 121 F.R.D. 324, 334 (N.D.Ill. 1988), *aff'd without op.*, 885 F.2d 873 (7th Cir. 1989).

  In In re Emanuel, the court developed the following criteria to determine the amount of the sanctions:

> The injured party can recover those attorney's fees incurred attributable to investigating, researching and fighting the [party's] petition as well as the fees incurred to research, prepare and prosecute its sanctions motion. The amount to be awarded is committed to the Court's discretion. The Court normally begins with the lodestar amount, which it may then adjust upwards or downwards.

> The party seeking compensatory sanctions must ordinarily provide the Court with contemporaneous time and expense records for each attorney and paralegal that specify the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary. The party may also be able to satisfy its burden by submitting a sworn affidavit that provides the same information [ ].

422 B.R. at 467.

  The injured party must submit "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity

so that the [] court can assess the time claimed for each activity. A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations and quotations omitted). If the documentation is inadequate, the court may reduce the award accordingly. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

In addition to attorneys' fees, 28 U.S.C § 1927 awards the injured party "excess costs and expenses" incurred. Evidence to that effect must also be submitted to the court.

CONCLUSION

In view of the forgoing, the *Motion for Sanctions* (dkt. #644) is GRANTED. The court hereby sanctions the Lender Parties, under the court's inherent authority, to pay attorneys' fees and costs incurred by SL Funding in preparing for and attending the Hearing – exclusive of travel time, airfare, and/or lodging – and the attorneys' fees incurred in drafting the *Motion for Sanctions* (dkt. #644) and related replies (dkt. #691).

SL Funding is ordered to submit an itemized description of their fees, excess costs and expenses in the manner described above within twenty-one (21) days. The Lender Parties may file a response fourteen (14) days thereafter.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 12th day of August 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge

-7-